UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DeWAYNE HERNDON KNIGHTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-CV-0186-CVE-JFJ |
| | ) |
| TULSA COUNTY SHERIFF'S OFFICE, | ) |
| AARON RAMSEY, Deputy, Tulsa County | ) |
| Sheriff's Office, | ) |
| TURN KEY HEALTH SERVICES | ) |
| PROVIDER, | ) |
| BILLIE BYRD, Sergeant, Tulsa County | ) |
| Sheriff's Office, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This civil rights action is before the Court on the motion to dismiss (Dkt. # 24) filed by defendants Deputy Aaron Ramsey, Sergeant Billie Byrd, and the Tulsa County Sheriff's Office (collectively, "defendants").[1] Citing Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss the civil rights complaint (Dkt. # 1) filed by plaintiff DeWayne Herndon Knighten, for failure to state any claims on which relief may be granted. Defendants contend that the allegations in the complaint, even accepted as true, fail to state any plausible claims against them under 42 U.S.C. § 1983, and, in the alternative, that if Knighten states any plausible claims against Ramsey or Byrd, both are entitled to qualified immunity. Defendants further contend that the Tulsa County

---

[1] A fourth defendant, Turn Key Health Services Provider ("Turn Key") has not been served. Dkt. # 12. Regardless, when, as here, a court authorizes a plaintiff to proceed in forma pauperis, the court "shall dismiss the case at any time if the court determines that . . .the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Applying this screening provision, the Court will therefore consider whether the complaint states any plausible claims against Turn Key.

Sheriff's Office ("TCSO") is not a proper defendant in a § 1983 action and must be dismissed from this action. Having considered the complaint, the motion to dismiss, Knighten's response in opposition to the motion to dismiss (Dkt. ## 27, 28), and defendants' reply brief (Dkt. # 35), the Court grants in part and denies in part, defendants' motion to dismiss the complaint.

I.  **Plaintiff's allegations and claims**

Knighten, who appears pro se and in forma pauperis, is currently incarcerated at the Jim E. Hamilton Correctional Center, in Hogden, Oklahoma. Dkt. # 36. But he brings this action based on events that allegedly occurred while he was detained at the David L. Moss Criminal Justice Center (the "jail"), in Tulsa, Oklahoma. Dkt # 1, at 2-8. The following facts are drawn from Knighten's complaint.

Knighten was arrested and booked into the jail on January 19, 2020. Dkt. # 1, at 4-5. Sometime before his arrest, Knighten was involved in an accident and he suffered fractures in both ankles. Id. at 4. The arresting officer told deputies at the jail about Knighten's ankle injuries. Id. The arresting officer asked to take Knighten to a hospital, but "Turn Key Medical Services staff" denied the officer's request. Id. Medical staff "claim[ed]" that Knighten "was faking [his] injuries, then refused to allow [him] the use of a wheelchair, despite the clear physical swelling and bruising of [his] legs, ankles, and feet." Id.

On February 7, 2020, Deputy Aaron Ramsey was assigned to transport Knighten to a hospital. Dkt. # 1, at 4-5. As Ramsey was pushing Knighten's wheelchair to Ramsey's car, before they left for the hospital, the two men began arguing because Ramsey thought Knighten was faking his injuries. Id. at 5. Ramsey "tried to force [Knighten] to walk on [his] broken bones by dumping [him] out of [his] wheelchair in the parking garage" at the jail. Id. Knighten refused to walk to the

2

car "on [his] broken ankles while black-boxed and handcuffed with no leg support." Dkt. # 1, at 4. When Ramsey "dumped" Knighten out of his wheelchair, it caused "more damage" and "more pain" to Knighten's fractured ankles. Id.

At the hospital, Knighten received "an x-ray, full body cat-scan, and MRI." Dkt. # 1, at 5. The results of these tests showed "more agitation to a crush injury." Id. When Knighten returned to the jail after his hospital visit, he was housed in the jail's medical unit until his "body healed enough to be placed in general population." Id. The doctors at the hospital recommended "light physical therapy in the future," but Turn Key denied Knighten physical therapy "because it was deemed 'non-life threatening.'" Id.

Between October 29, 2020, and December 14, 2020, Knighten filed several grievances through the jail's electronic kiosk terminal. Dkt. # 1, at 7. Knighten's grievances complained of the "assault" committed by Ramsey and the "lack of medical treatment [he] should have received," as well as "improper staff conduct," "criminal activity by staff," and the "unjust denial of priveledges [sic]." Id. at 6-7. Sergeant Billie Byrd "minimally answered" Knighten's grievances. Id. at 7. In response to one grievance, Byrd told Knighten that "Ramsey was punished, and [Knighten] just wasn't notified." Id. at 8. Byrd ignored Knighten's request to file criminal charges against Ramsey. Id. at 7-8. In addition, there was no investigation by the TCSO's Internal Affairs Division or other law enforcement officials. Dkt. # 1, at 7. According to Knighten, the TCSO's "[s]taff [did] not attempt[] to do anything or answer [his] grievances" even though they "openly admitted to the assault and lack of medical treatment." Id. Knighten also was "denied the name of the medical personnel who received [him] in booking," when he contacted the head nurse, Mrs. Hadden. Id. at 7-8. The "Tulsa County Sheriff's Internal Affairs refuse[d] to answer all [of Knighten's] inquiries,"

3

and his "pleas for help from [the] Oklahoma State Bureau of Investigations ha[ve] been ignored." Dkt. # 1, at 7.

Based on these facts, Knighten claims that (1) Deputy Ramsey was assigned to transport Knighten to the hospital and caused him further injuries by assaulting him; (2) Turn Key "refused Knighten medical treatment" for his ankle injuries when he was booked into the jail; (3) Sergeant Byrd "failed to adequately investigate [Knighten's] grievance for medical attention and assault" and "refus[ed] to notify" the TCSO's Internal Affairs Division about Ramsey's assault; and (4) the TCSO "refus[ed] to launch a criminal investigation" regarding the assault. Dkt. # 1, at 4.[2]

As relief for these alleged violations of his civil rights, Knighten seeks punitive damages of $250,000 from Ramsey and $200,000 from Turn Key, and compensatory damages of $200,000 for pain, suffering, and mental anguish. Dkt. # 1, at 5.

## II.   Dismissal standard

Defendants move to dismiss the complaint under FED. R. CIV. P. 12(b)(6). Dkt. # 24. In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all the well-pleaded factual allegations of the complaint and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570

---

[2]  Knighten separately alleges he was deprived of his rights (1) to adequate access to health care; (2) to be free from retaliation by detention staff; (3) to be free from physical abuse; (4) to be free from mental abuse; (5) to seek a criminal investigation against detention staff misconduct; (6) to seek criminal charges against detention staff misconduct; and (7) to be safe and secure from misconduct by detention staff. Dkt. # 1, at 3. Several of these alleged deprivations appear to be included within Knighten's more specific claims against the named defendants. Other alleged deprivations are not supported by any factual allegations. Consequently, the Court finds it reasonable to read the complaint as asserting four claims against the named defendants.

4

(2007). The complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Bell Atl. Corp., 550 U.S. at 558.

Additionally, when a plaintiff appears pro se, a court must liberally construe the complaint. Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007). This "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nonetheless, even a pro se plaintiff bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." Id. And in affording a plaintiff's complaint a liberal construction, a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

These same standards apply when a court considers whether a complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Kay, 500 F.3d at 1217-18.

**III. Discussion**

To survive a motion to dismiss for failure to state a § 1983 claim, a plaintiff must plausibly allege: "(1) a violation of rights protected by the United States Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002) (alteration in original) (citation omitted); see also Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016) (describing a § 1983 claim as consisting of two elements: the "(1) deprivation of a federally protected right by (2) an actor acting under color of state law.").

Liberally construing the complaint, the Court finds it reasonable to read the complaint as asserting four possible § 1983 claims: (1) a Fourteenth Amendment excessive-force claim against Deputy Ramsey based on the alleged assault; (2) a Fourteenth Amendment due-process claim against Sergeant Byrd regarding her alleged mishandling of his grievances; (3) a Fourteenth Amendment due-process claim against the TCSO regarding its alleged refusal to pursue a criminal investigation against Ramsey; and (4) an Eighth Amendment deliberate-indifference claim against Turn Key based on its alleged refusal to provide adequate medical care. However, as discussed next, only one of these claims is plausible.

### A. Official-capacity claims against Deputy Ramsey and Sergeant Byrd

As a preliminary matter, Knighten purports to sue Deputy Ramsey and Sergeant Byrd in their individual and official capacities. Dkt. # 1, at 2-3. Defendants contend that the allegations in the complaint fail to state any plausible official-capacity claims against Ramsey or Byrd. See Dkt. # 24, at 11-12. The Court agrees. "[A] suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office.'" Brown v. Montoya, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). In contrast, "[i]ndividual capacity 'suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law.'" Id. (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Knighten's allegations are most reasonably read as demonstrating his intent to sue Ramsey and Byrd in their individual capacities for their "official acts,"—i.e., for acts they took under color of state law—but not in their official capacities. See Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990) ("It does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official

6

capacity.") When a plaintiff brings an official-capacity suit against county officials, the plaintiff is effectively suing the county. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). And, to establish liability against a county in a § 1983 action, a plaintiff must show either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000). But none of Knighten's allegations suggests that the alleges actions of either Ramsey or Byrd were representative of an official Tulsa County policy or custom. Nor does he suggest that either of these defendants acted as Tulsa County officials with final policy making authority.

The Court therefore grants in part defendants' motion to dismiss, and dismisses the complaint as to any official-capacity claims Knighten asserts against Deputy Ramsey and Sergeant Byrd.

### B. Excessive-force claim against Deputy Ramsey

Defendants contend the complaint also fails to state a plausible claim against Deputy Ramsey, in his individual capacity, for the use of excessive force. They argue that "[t]he amount of force allegedly used by Deputy Ramsey was *de minimis* and does not offend the Constitution." Dkt. # 24, at 5. Alternatively, they argue that if Ramsey's alleged use of force implicates the Constitution, the use of force was objectively reasonable and thus did not violate the Fourteenth Amendment. Id. at 5-7. Finally, they argue that even if Ramsey's alleged use of force violated the Constitution, he is entitled to qualified immunity because he did not violate a clearly established right. Dkt. # 24, at 10-11.

### 1.     Knighten states a plausible excessive-force claim.

As defendants acknowledge, a pretrial detainee can state a plausible Fourteenth Amendment excessive-force claim by alleging that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). In excessive-force cases "objective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Ultimately, several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. The Kingsley Court noted that, under this objective standard, a pretrial detainee need not prove that an officer intended to inflict punishment. Id. at 398. "Rather, . . . a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id.

Accepting Knighten's factual allegations as true, as the Court must at this stage of the litigation, the Court finds them sufficient to state a plausible claim that Deputy Ramsey, acting under color of state law, violated Knighten's Fourteenth Amendment right to be free from the use of excessive force. According to Knighten, Ramsey's task was to transport Knighten to the hospital. In performing that task, Ramsey suggested Knighten was faking his ankle injuries and Ramsey "dumped" Knighten out of a wheelchair when Ramsey refused to walk to Ramsey's car. Dkt. # 1, at 4-5. Knighten alleges he was "black-boxed and handcuffed" at the time, in no condition to walk

on his "broken bones," and in no position to defend himself. Dkt. # 1, at 4, 7. And, while Knighten alleges he exchanged words with Ramsey, none of the allegations in the complaint suggests that Knighten posed a security threat, a flight risk, or a personal threat to Ramsey that would have called for the use of any force, much less that called for dumping Knighten from the wheelchair. Further, according to Knighten, Ramsey's actions caused more damage to his fractured ankles and caused him additional pain. Id. at 4. Accepting these facts as true, it is at least plausible that Ramsey's use of force was "not rationally related to a legitimate governmental objective or [was] excessive in relation to that purpose." Kingsley, 576 U.S. at 398.

Moreover, the *de minimis* principle defendants rely on to argue that this claim is not plausible does not carry the weight defendants place upon it. Dkt. # 24, at 5-7. The extent of any resulting injury from the use of allegedly excessive force is only one factor in the Kingsley analysis. 576 U.S. at 397. As just discussed, Knighten alleges that Ramsey had no objectively reasonable basis to use any force against him in response to his refusal to walk on his broken ankles and that Ramsey's conduct caused more damage to his preexisting injuries. As this case proceeds, additional facts may come to light that support defendants' position that Ramsey's alleged use of force was objectively reasonable under the circumstances and that any resulting injuries were insignificant. But in determining whether a plaintiff can withstand a motion to dismiss for failure to state a claim, a court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atl. Corp, 550 U.S. at 555, and allow the complaint to proceed "even if it appears 'that recovery is very remote and unlikely'," id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Because the complaint contains enough facts to state a plausible Fourteenth Amendment excessive-force claim against Deputy Ramsey, the Court also must consider Ramsey's assertion of qualified immunity.

**2.    Ramsey's assertion of qualified immunity does not support dismissal.**

"Qualified immunity protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights." Mayfield v. Bethards, 826 F.3d 1252, 1255 (10th Cir. 2016). When a defendant asserts the defense of qualified immunity at the motion-to-dismiss stage, the defendant faces "a more challenging standard of review than would apply on summary judgment." Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004). "[A]t the motion to dismiss stage, [a court's] review is limited to the sufficiency of the allegations in the [c]omplaint." Mayfield, 826 F.3d at 1258. Thus, a plaintiff must plausibly allege (1) that the defendant violated the plaintiff's constitutional right and (2) that the right was clearly established at the time of the alleged conduct. Id. at 1255.

As just discussed, Knighten plausibly alleges a constitutional violation. Defendants argue, however, that at the time of the alleged violation the law was clearly established "that actions like those allegedly taken by Deputy Ramsey are *de minimis* applications of force which do not implicate constitutional concerns." Dkt. # 24, at 5-7, 10. The Court disagrees. "[A] right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mayfield, 826 F.3d at 1258 (citation omitted); accord District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018). But a "plaintiff need not show the very act in question previously was held unlawful" to defeat an assertion of qualified immunity. Gutierrez v. Cobos, 841 F.3d 895, 900 (10th Cir. 2016). Rather, it suffices to show that existing law is "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at 590. The right at issue here is Knighten's right, as a pretrial detainee, to be free from the use of force that is objectively unreasonable under all relevant circumstances. In February 2020, it

would have been "clear enough" to a reasonable detention officer that it could be unlawful to use force against a pretrial detainee in a wheelchair who was "black-boxed and handcuffed" when the detainee posed no security threat or flight risk and there exists no apparent, much less legitimate, purpose for the use of force. See e.g., Miller v. Glanz, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (finding a plaintiff's allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked the plaintiff while the plaintiff was handcuffed behind his back and his ankles were also restrained); Thompson v. Commonwealth of Virginia, 878 F.3d 89, 102-05 (4th Cir. 2017) (discussing cases decided before April 8, 2010, and concluding: "As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order. That principle applies with particular clarity to cases such as this one, where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way."). While Miller and Thompson both involved claims asserted by convicted prisoners under the Eight Amendment's Cruel and Unusual Punishment Clause, this clearly established law would make it even more apparent to a reasonable detention officer that the gratuitous use of force against a restrained pretrial detainee could violate the Fourteenth Amendment's Due Process Clause. See Kingsley, 576 U.S. at 400 (noting that "[t]he language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"). The Court thus finds that

Ramsey is not entitled to dismissal of the Fourteenth Amendment excessive-force claim on the basis of qualified immunity.

### 3. Knighten may proceed on his claim against Deputy Ramsey.

Because Knighten states a plausible Fourteenth Amendment excessive-force claim and Deputy Ramsey's assertion of qualified immunity does not support dismissal at this stage of the litigation, the Court denies in part defendants' motion to dismiss the Fourteenth Amendment excessive-force claim asserted against Ramsey, in his individual capacity. Within 14 days of the entry of this opinion and order, Ramsey shall file an answer to the complaint as to that claim. Fed. R. Civ. P. 12(a)(4)(A).

### C. Due-process claim against Sergeant Byrd

Next, defendants contend that the complaint fails to state a plausible claim against Sergeant Byrd, in her individual capacity, because there is no constitutional right to have grievances investigated. Dkt. # 24, at 8-9. The Court agrees. Liberally construed, Knighten's allegations as to Sergeant Byrd focus on (1) her alleged failure to respond, or failure to adequately respond, to grievances he filed about Deputy Ramsey's alleged assault and the alleged lack of medical care he received and (2) her alleged refusal to notify the TCSO's Internal Affairs Division of the alleged assault. Dkt. # 1, at 4, 7-8. But a plaintiff's claim that a prison official "mishandled his prison grievance does not implicate any due-process rights." Johnson v. Richins, 438 F. App'x 647, 649 (10th Cir. 2011) (unpublished);[3] see also Todd v. Bigelow, 497 F. App'x 839, 842 (10th Cir. 2012) (unpublished) (rejecting a plaintiff's "claim that he was deprived of his Due Process rights because

---

[3] The Court cites each unpublished decision in this opinion and order for its persuasive value. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

his numerous administrative grievances did not spur the re-authorization of his Neurontin prescription" because "prisoners have no liberty interest in prison grievance procedures"); Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) (noting that "there is no independent constitutional right to state administrative grievance procedures"). Even accepting as true that Byrd mishandled his grievances, Knighten fails to state a plausible Fourteenth Amendment due-process claim against Byrd, in her individual capacity. As a result, the Court finds it unnecessary to consider Byrd's assertion of qualified immunity.

The Court therefore grants in part defendants' motion to dismiss, and dismisses the complaint as to the Fourteenth Amendment due-process claim asserted against Sergeant Byrd, in her individual capacity.

### D. Due-process claim against the TCSO

Defendants construe Knighten's complaint as alleging that the TCSO "is responsible for Internal Affairs' failure to conduct a criminal investigation into [Knighten's] claims against Deputy Ramsey and for not filing charges against him." Dkt. # 24, at 11. The Court finds that this is a fair reading of the complaint. See Dkt. # 1, at 4 ("The [TCSO] refuses to launch a criminal investigation for criminal misconduct by a deputy assigned to Tulsa County Jail to transport me to a outside medical provider.") Defendants contend that the TCSO should be dismissed from this action because the TSCO cannot be sued under § 1983. Dkt. # 24, at 12-13. Alternatively, defendants argue that Knighten fails to state a plausible claim because individuals have no constitutional right to have another individual criminally investigated. Id. at 13. The Court agrees with both points.

First, the law of the state in which the district court is located determines a noncorporate entity's capacity to be sued. FED. R. CIV. P. 17(b)(3). Under Oklahoma law, a county sheriff's office

is not subject to suit under § 1983 because it has no legal identity of its own. See Reid v. Hamby, No. 95-7142, 124 F.3d 217 (Table), 1997 WL 537909, at *6 (10th Cir. Sept. 2, 1997) (unpublished) (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit"); Hollis v. Creek Cty. Sheriff's Off., No. 13-CV-0590-CVE-FHM, 2013 WL 6074165, at *2 (N.D. Okla. Nov. 18, 2013) (unpublished) (collecting cases and stating that the "Sheriff's Office is not a proper defendant").

Second, even assuming Knighten could amend the complaint to sue Tulsa County through a proper defendant, e.g., the Tulsa County Sheriff or the Board of County Commissioners of the County of Tulsa, his allegations do not state a plausible constitutional claim arising from the alleged failure to open a criminal investigation against Deputy Ramsey. As defendants contend, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); see also Maxey v. Banks, 26 F. App'x 805, 808 (10th Cir. 2001) (unpublished) (holding that an individual "does not have a federal due process right to a police investigation").

For these reasons, the Court grants in part defendants' motion to dismiss, dismisses the TCSO from this action as an improper party, and dismisses the complaint in part as to the Fourteenth Amendment due-process claim arising from the failure to launch a criminal investigation into Ramsey's alleged assault against Knighten.

### E. Deliberate-indifference claim against Turn Key

Lastly, the Court considers whether the complaint is sufficient to state a plausible Eighth Amendment deliberate-indifference claim against Turn Key. Knighten alleges that on January 19,

14

2020, when he was being booked into the jail, a Turn Key employee[4] refused the arresting officer's request to take Knighten to the hospital, claimed that Knighten was faking his injuries, and refused to let him use a wheelchair despite noticeable swelling and bruising on his ankles and feet. Dkt. # 1, at 4. In addition, after Knighten returned from a trip to the hospital on February 7, 2020, he was housed in the medical unit until he healed but Turn Key refused to provide him with "light physical therapy" per the recommendations of doctors at the hospital, "because it was deemed 'non-life threatening." Dkt. # 1, at 5.

For two reasons, the Court finds these allegations, even accepted as true, fail to state any plausible claims for relief against Turn Key. First, when a plaintiff sues a private corporation for an alleged constitutional violation committed by its employees, the corporation is treated like a municipality and "cannot be held liable under § 1983 on a *respondent superior* theory." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Thus, a plaintiff must plausibly allege either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action." Seamons, 206 F.3d at 1029; see also Revilla v. Glanz, 8 F. Supp. 3d 1336, 1341 (N.D. Okla. 2014) (explaining that to establish corporate liability based on policy or custom a plaintiff must "allege facts to show the existence of a [corporate] policy or custom by which each plaintiff was denied a constitutional right and that there is a direct causal link between the policy or custom and the injury alleged"). Knighten's allegations refer to actions of unidentified

---

[4]  Knighten alleges that the head nurse at the jail, Mrs. Hadden, refuses to provide him the name of the employee who interviewed him during the booking process. Dkt. # 1, at 8.

Turn Key employees, but his allegations do not suggest that these actions were representative of a Turn Key policy or custom, or that any of the unidentified employees acted as policymakers for Turn Key.

Second, even assuming Knighten could amend the complaint to add one or more Turn Key employees as defendants or to include additional factual allegations that might support imposing municipal liability against Turn Key, he would not be able to state a plausible deliberate-indifference claim. Under the Eighth Amendment, jail officials "must provide humane conditions of confinement," i.e., they "must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a plausible Eighth Amendment violation based on the failure to provide medical care, a plaintiff must allege facts evidencing "deliberate indifference to [his] serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Negligence, even negligence rising to the level of medical malpractice, does not violate the Eighth Amendment. See id. at 106-07; see also Callahan v. Poppell, 471 F.3d 1155, 1160 (collecting cases regarding the scope of the Eighth Amendment right to adequate medical care). This means that a plaintiff must allege facts showing "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 827. Rather, to satisfy the deliberate-indifference standard, a plaintiff must plausibly allege (1) a harm that was objectively "sufficiently serious," Callahan, 471 F.3d at 1159, and (2) that the defendant subjectively "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety," Farmer, 511 U.S. at 837. Here, Knighten alleges that Turn Key's medical staff (1) did not honor the arresting officer's purported request to take Knighten directly to the hospital on January 19, 2020, when he was booked into the

16

jail; and (2) did not follow the doctors' recommendations for "light physical therapy," after he returned from a hospital visit on February 7, 2020. Dkt. # 1, at 4-5. But Knighten's disagreement with decisions Turn Key staff members made in assessing his need for immediate medical care or his need for physical therapy do not support his claim that he was denied constitutionally adequate medical care. See, e.g., Gamble, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (reasoning that "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" (quoting Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)); Callahan, 471 F.3d at 1160 (explaining that the Eighth Amendment right to adequate medical treatment does not include a right to a particular course of treatment). Even accepting Knighten's allegations as true, those allegations show only that he was: denied the course of treatment he thought he needed on January 19, 2020, when he was booked into the jail for injuries he sustained at some unspecified time before his arrest that were unrelated to his arrest and for which he did not previously seek treatment; he subsequently received medical care at the jail that differed from the care recommended by doctors who performed x-rays on February 7, 2020; and he was housed in the jail's medical unit until his body healed. Dkt. # 1, at 4-5. At most, these facts show a negligible delay in medical treatment, not deliberate indifference to a serious medical need.

For these reasons, the Court dismisses the complaint in part, under 28 U.S.C. § 1915(e)(2)(B)(ii), as to all claims asserted against Turn Key.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. defendants' motion to dismiss (Dkt. # 24) is **granted in part and denied in part**;

2. the complaint (Dkt. # 1) is **dismissed** in part as to:

    a. all claims asserted against defendant Billie Byrd,

    b. all claims asserted against defendant the Tulsa County Sheriff's Office,

    c. any official-capacity claims asserted against defendant Aaron Ramsey, and

    d. all claims asserted against defendant Turn Key Health Services Provider;

3. Knighten may proceed only on the Fourteenth Amendment excessive-force claim he asserts against defendant Aaron Ramsey, in his individual capacity; and

4. within 14 days of the entry of this opinion and order, or by **September 1, 2022**, defendant Aaron Ramsey shall file an answer to the complaint as to the Fourteenth Amendment excessive-force claim asserted against him in his individual capacity.

**DATED** this 18th day of August, 2022.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE